JULIO CÉSAR RIVERA TOSADO, Plaintiff and Appellee, *v.* MARY-
LAND CASUALTY CO. and DR. HÉCTOR A. MARTÍNEZ VILLA-
FAÑE, Defendants and Appellants.

No. R-66-262.        Decided December 19, 1968.

*Martínez-Muñoz, Agraít-Oliveras & Otero* for appellants. *Fede-
rico Valladares* for appellee.

Second Division composed of Mr. Justice Hernández Matos, as
Chief Judge of Division, Mr. Justice Santana Becerra, Mr.
Justice Dávila, and Mr. Justice Torres Rigual.

MR. JUSTICE SANTANA BECERRA delivered the opinion of the Court.

The Superior Court, San Juan Part, rendered judgment
awarding damages against appellants Dr. Héctor A. Mar-
tínez Villafañe and his insurer, Maryland Casualty Co. The

judgment is based on the following facts which the court found proved:

"1—On August 13, 1965 plaintiff Julio César Rivera Tosado, as part of his job, visited the residence of Dr. Héctor Martínez Villafañe, defendant's insured client. Mrs. Martínez Villafañe invited him to come into the living room while she prepared a document which she had to deliver to him. Rivera Tosado commented how pretty the terrace was, which place he knew, since he had previously made repairs on its roof, and the lady told him that he could go and see it. When plaintiff walked towards the terrace he crashed against the glass door which separated it from the living room. The door broke and the pieces of glass practically trimmed off the tip of Rivera Tosado's nose.

"The accident and its consequences were the result of the concurrent negligence, in equal parts, of Rivera Tosado, who having knowledge of the existence of the glass division did not exercise care in attempting to pass from the living room to the terrace, and of the defendant's insured, who did not warn plaintiff of the existence of the door nor had put something on the glass to make it visible.

"2—Dr. Alberto Sánchez performed a surgical suture on plaintiff at the Presbyterian Hospital, without administering anesthesia to sew on the nose the portion that had been cut off. Dr. Iván Márquez continued treating him and under his advice plaintiff was confined in his house for 56 days, because he could not expose the wound to the sun or dust. Likewise the doctor advised him not to do any work which might cause infection in the wound, which prevented him from performing his habitual work in the maintenance, repair and alteration of buildings.

"3—On the day of the trial Rivera Tosado, 56 years old, presented a mutilating scar on the nose, which produced the comic impression of a nose with a small hat. The damages suffered by plaintiff are assessed at SIX THOUSAND DOLLARS ($6,000)."

At law, the trial court applied § 1802 of the Civil Code as well as its provision on concurrent negligence, having assessed the damages at $6,000, and rendered judgment against defendants for the amount of $3,000, and $300 for attorney's fees.

Plaintiff-appellee has not requested review of the judgment as to the concurrent negligence. Review has been requested by defendants-appellants and the errors assigned are directed to the evidence. The writ having been issued, appellants have not sent to this Court the transcript of evidence, for which reason we are not in a condition to judge the findings of fact of the court.[1]

Section 1802 of the Civil Code provides that a person who by an act or omission causes damage to another, when there is fault or negligence, shall be obliged to repair the damages so done, and § 1058 provides that no one shall be liable for events which *could not be foreseen* or which having been foreseen were *inevitable*, with the exception of the cases expressly mentioned in the law or those in which the obligation so declares.

The sources of obligations are, among others, the *law* and illicit acts and omissions or those in which *any kind* of fault or negligence *occurs*. Section 1042. And § 1057 provides that the fault or negligence of the debtor consists of the *omission* of the *steps* which may be required by the character of the obligation, and which may pertain to the circumstances of the persons, *time*, and place.

■■ This set of sections of our civil code sanctions two facts: (1) the duty of a person in his social relations not to cause any damage to another; and (2) the duty to compensate him in the event damage is caused. He would be exempt from this second duty—except in cases where a criterion of objective liability governs by law—provided the

---

[1] In answer to an interrogatory submitted by appellants, plaintiff-appellee testified, under oath, that he had visited the residence of Dr. Martínez Villafañe on one occasion prior to the occurrence of the accident; that only on one occasion he had passed through that place and the glass door was open, the opening was there and he did not strike against the door; and that said day he had gone to Dr. Martínez Villafañe's residence to collect a debt. Prior to the accident plaintiff had repaired several leaks in the roof of Dr. Villafañe's carport.

tortious act could not be foreseen or which having been foreseen was inevitable.

■ If the fault or negligence on which the liability of § 1802 is predicated consists, pursuant to § 1057, in the failure to be diligent according to particular circumstances, and pursuant to § 1058 liability is imposed for every event which could have been foreseen, § 1802 inevitably centers around the function of the person's foresight, as controlling factor of his liability toward his fellowmen.[2]

This function which demands the duty to foresee the damage is immutable. It does not change. There is mutation, with the lapse of time, in relation to the things and the risks to be foreseen. Thus, with full conscience of the social mutations, § 1057 projects, *ad infinitum*, the duty not to cause damage, in the changing circumstances of each era.

■ The glass partitions or walls whether fixed or as movable doors are frequently used in modern constructions. They are not intrinsically dangerous objects, *Santaella* v. *Licari, supra*, but they may produce accidents, like the one in the present case, in a person who has not been warned or advised or who having defective eyesight confuses the empty space with the transparent material body. Particularly if, as in the case at bar, this is not a wall or end partition, but a transparent partition which leads to another part of the structure to which there is access.

In the absence of other precautions, the prevention and the care to be exercised to avoid causing damage are simple.

---

[2] The duty to foresee, within the juridic figure of the quasi-delictive liability of § 1802, is required by our doctrine. *Weber* v. *Mejías,* 85 P.R.R. 72 (1962); *Cruz Costales* v. *Commonwealth,* 89 P.R.R. 102 (1963); *Rodríguez* v. *Franqui,* 86 P.R.R. 727 (1962); *Ramos* v. *Carlo,* 85 P.R.R. 337 (1962); *Ginés* v. *Aqueduct and Sewer Authority,* 86 P.R.R. 490 (1962); *Colón* v. *Mendoza,* 83 P.R.R. 293 (1961); *Baralt* v. *Commonwealth,* 83 P.R.R. 268 (1961); *Santaella* v. *Licari,* 83 P.R.R. 855 (1961); *Pereira* v. *Commonwealth,* 91 P.R.R. 728 (1965); *Salvá Matos* v. *Díaz Construction Corp.,* 95 P.R.R. 880 (1968).

It suffices to adhere an ornament or any other material or design to the partition in order to call the attention that there is a body and not the space.

Negligence could have been incurred also, although we are not deciding it under the conditions of the record before us, in relation to the material used. There is nothing to indicate that plaintiff-appellee approached the wall in an unusual manner, or with exaggerated violence. Under said circumstances, even though his face came in contact with the glass door, it should not have broken and cut him. It indicates that there was negligence or lack of foresight in the selection of the proper glass for said kind of wall.

The judgment awarding compensation to plaintiff-appellee will be affirmed.